UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA GUADALUPE JEFFREY,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No.: 17-cv-01444-WQH (RBB)<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 13, 14]** |

This Report and Recommendation is submitted to the Honorable William Q. Hayes, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

On July 17, 2017, Plaintiff Maria Guadalupe Jeffrey filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her applications for a period of disability and disability insurance benefits and for Supplemental Security Income ("SSI") benefits. (Compl. 1-3, ECF No. 1.)

/ / /

1

Now pending before the Court are the parties' cross-motions for summary judgment. For the reasons set forth herein, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED**, and that judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I. PROCEDURAL BACKGROUND

On January 16, 2014, Plaintiff Maria Jeffrey filed applications for a period of disability and disability insurance benefits and for SSI benefits under Titles II and XVI, respectively, of the Social Security Act, alleging disability since December 1, 2011, due to shoulder injury, rib/leg/back and neck pain. (Admin. R. Attach. #5, 199-213, ECF No. 10; id. Attach. #6, at 226.) After her applications were denied initially and upon reconsideration, (Admin. R. Attach. #4, 125-30, 133-38, ECF No. 10), Jeffery requested an administrative hearing before an administrative law judge ("ALJ"), (id. at 139-40). An administrative hearing was held on March 10, 2016. (Id. Attach. #2, at 56.) Plaintiff appeared at the hearing with counsel, and testimony was taken from her (through an interpreter) and a vocational expert ("VE"). (Id. at 56-74.)

As reflected in his May 6, 2016 hearing decision, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from her alleged onset date through the date of the decision. (Id. at 29-37.) The ALJ's decision became the final decision of the Commissioner on May 15, 2017, when the Appeals Council denied Plaintiff's request for review. (Id. at 1-3.) This timely civil action followed.

## II. SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 1, 2011, her alleged onset date. (Admin. R. Attach. #2, 31, ECF No. 10.)

///

At step two, he found that that Jeffrey had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; right shoulder impingement syndrome status-post arthroscopy, with low grade partial-thickness tear of the supraspinatus tendon; and right knee osteochondral damage. (Id.) The ALJ concluded that these impairments resulted in more than minimal work-related functional limitation. (Id.)

At step three, the ALJ found that Plaintiff Jeffrey did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments. (Id. at 32.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (Id. at 32-34.)

For purposes of his step-four determination, the ALJ adduced and accepted the VE's testimony that a hypothetical person with Plaintiff's vocational profile would not be able to perform the requirements of her past relevant work. Accordingly, the ALJ found that Jeffrey was unable to perform her past relevant work as actually performed or as generally performed in the national economy. (Admin. R. Attach. #2, 34-35, ECF No. 10.)

The ALJ then proceeded to step five of the sequential evaluation process. As of the alleged onset date, the ALJ classified Plaintiff as a younger individual (age 18-49) who subsequently changed age category to an individual closely approaching advanced age (age 50-54) with a high school education for whom transferability of skills was immaterial. (Id. at 35.) Based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile could perform the requirements of occupations that existed in significant numbers in the national economy (i.e., folder and hand packager), the ALJ found that Jeffrey was not disabled. (Id. at 35-36.)

///

///

## III. SOLE ISSUE IN DISPUTE

The sole issue in dispute in this case is whether the ALJ erred at step five of the Commissioner's sequential evaluation process. Specifically, Plaintiff contends that the ALJ erred by failing to apply Rule 202.09 of the Commissioner's Medical-Vocational Guidelines. (See Pl.'s Mem. P. & A. 5, ECF No. 13.) Jeffery asserts that the ALJ failed to satisfy the Commissioner's burden of proof at step five because he did not establish whether Plaintiff was illiterate or unable to communicate in English. (Id. at 5-9.) In response, the Commissioner contends that the ALJ could satisfy the step five burden by either (1) vocational expert testimony or (2) reference to the Medical-Vocational Guidelines. (See Def.'s Mem. P. & A. Attach. #1, 6, ECF No. 14.) The Commissioner asserts that the ALJ's step-five finding is supported by substantial evidence and that Plaintiff's limited ability to speak English did not prevent her from performing the occupations identified by the VE. (Id. at 4-7.)

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Sec. of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /

/ / /

## V. DISCUSSION

### A. The Medical-Vocational Guidelines

The Commissioner's Medical-Vocational Guidelines, also known as the "grids," correlate a claimant's age, education, previous work experience, and RFC to direct a finding of disabled or not disabled, without the need of testimony from vocational experts. See Heckler v. Brown, 461 U.S. 458, 461 (1983); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989). The grids categorize jobs by three physical "exertional" levels, consisting of sedentary, light, and medium work. Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). These exertional levels are further divided by the claimant's age, education, and work experience. Id. The grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in the appropriate exertional category. Id.

As the Ninth Circuit explained in Cooper, 880 F.2d at 1155-56 (footnotes omitted):

> The ALJ must apply the grids if a claimant suffers only from an exertional impairment. 20 C.F.R. Part 404, Subpart P, Appendix 2, §§ 200.00(a) & (e) (1988). In such cases, the rule is simple: the grids provide the answer. Where the grids dictate a finding of disability, the claimant is eligible for benefits; where the grids indicate that the claimant is not disabled, benefits may not be awarded. However, where a claimant suffers solely from a nonexertional impairment, the grids do not resolve the disability question, *id*. at § 200.00(e)(1); other testimony is required. In cases where the claimant suffers from both exertional and nonexertional impairments, the situation is more complicated. First, the grids must be consulted to determine whether a finding of disability can be based on the exertional impairments alone. *Id*. at § 200.00(e)(2). If so, then benefits must be awarded. However, if the exertional impairments alone are insufficient to direct a conclusion of disability, then further evidence and analysis are required. In such cases, the ALJ must use the grids as a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." *Id*. In short, the grids serve as a ceiling and the ALJ must examine independently the additional adverse consequences resulting from the nonexertionary impairment.

If, as Jeffrey contends, Rule 202.09, contained in the Medical-Vocational Guidelines, directs a finding of disabled based on her limitation to light work due to her exertional limitations, then contrary to the Commissioner's contention, the ALJ could not satisfy his step-five burden by relying on the VE's testimony. See Lounsburry v. Barnhart, 468 F.3d 1111, 1116 (9th Cir. 2006) ("Before turning to a vocational expert, the ALJ should have analyzed whether [the claimant's] exertional impairments were enough, by themselves, to warrant a finding of disabled.").

### B. Rule 202.09

Under Rule 202.09, an individual is deemed "disabled" if the person meets the following criteria: (1) limitation to light work; (2) closely approaching advanced age (i.e., 50-54 years of age); (3) illiterate or unable to communicate in English; and (4) unable to perform past relevant unskilled work. See 20 C.F.R., Subpart P, App. 2, § 202.09.

Here, the ALJ found that Jeffrey was limited to a range of light work. (Admin. R. Attach. #2, 32, ECF No. 10.) Plaintiff was born on November 30, 1962, and therefore was forty-nine years old on the alleged disability onset date; she subsequently changed age category to closely approaching advanced age. (Id. at 35.) The ALJ also found that Plaintiff was unable to perform any of her past relevant work, which he classified as unskilled. (Id. at 34-35.)

Thus, whether Rule 202.09 directs a finding of disabled based on Jeffery's limitation to light work due to her exertional limitations turns on whether she is illiterate or unable to communicate in English. "[Plaintiff] is illiterate or unable to communicate in English if [she] is either illiterate in English or unable to communicate in English or both." See Silveira v. Apfel, 204 F.3d 1257, 1261 (9th Cir. 2000) (footnote omitted).

The Commissioner's regulations define "illiteracy" as "the inability to read or write." See 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1). The regulations go on to say: "We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." Id. In Chavez v. Dep't of Health and Human Servs., 103 F.3d 849, 852 (9th Cir. 1996), the

6

17-cv-01444-WQH (RBB)

Ninth Circuit held that only literacy in English is considered; "illiterate" therefore means illiterate in English. The Commissioner bears the burden of establishing that Plaintiff is literate in English. See Silveira, 204 F.3d at 1261. The Commissioner's regulations define the "ability to communicate in English" as "the ability to speak, read and understand English." See 20 C.F.R. §§ 404.1564(b)(5), 416.964(b)(5).

### C. Plaintiff's Literacy and Ability to Communicate in English

The ALJ failed to make any express findings regarding Plaintiff's literacy and ability to communicate in English. He did find that Jeffrey had "at least a high school education." (Admin. R. Attach. #2, 35, ECF No. 10.) But Plaintiff's testimony that she had the functional equivalent of a high school education in Mexico, (see id. at 60, 72), begs the question of whether she has the ability to read and write in English and "the ability to speak, read and understand English." If Jeffery is illiterate or unable to communicate in English, she is disabled for purposes of Rule 202.09 under Silveira. At the administrative hearing, when asked whether she was able to speak or understand English, Jeffery responded (through the interpreter) "no," before adding "just very little." (See id. at 60.) She provided the same negative answer on the Disability Report form she submitted with her benefits application. (See id. Attach. # 6, at 225.) The Court notes that, on the same form, Plaintiff answered "yes" to the question, "Can you read and understand English?"; however, she answered "no" to the question, "Can you write more than your name in English?" (See id.)

Other courts have found that similarly scant evidence of a plaintiff's ability to read and write in English falls short of carrying the Commissioner's burden of establishing literacy. See, e.g., Barrera v. Astrue, No. ED CV 12–764–E, 2012 WL 5381645, at *2 (C.D. Cal. Nov. 1, 2012) (holding that burden not met). "The only direct evidence that Plaintiff can read and write in English (despite her denials of such ability) consists of Plaintiff's vague response 'Yeah, some' to the ALJ's question regarding whether Plaintiff can read or write 'short, simple words, like 'go,' [and] 'stop.'" Id. (alteration in original). There also was evidence that Barrera used some English at work and went to English-

speaking "classes," but the record did not disclose whether his work or classes required reading and writing. Id.; Obispo v. Astrue, No. CV 11–9381–SP, 2012 WL 4711763, at *4 (C.D. Cal. Oct. 3, 2012) (concluding that burden not met where plaintiff testified that he could read and speak "a little bit" of English, but it was unclear what plaintiff meant or the significance of this evidence where the plaintiff consistently required the assistance of an interpreter); Franco v. Astrue, No. EDCV 11–1473 SS, 2012 WL 3638609, at *13-14 (C.D. Cal. Aug. 23, 2012) (holding that burden not met where plaintiff answered, "A little bit yes, but I don't write it-I write it in my form of Spanish[,]" when asked if he could read English); Calderon v. Astrue, No. 1:08–cv–01015 GSA, 2009 WL 3790008, at *9-10 (E.D. Cal. Nov. 10, 2009) ("A vague response of '[a] little bit' in response to whether or not a claimant can read or write English is insufficient to establish that Plaintiff can read or write a simple message in the English language.").

Moreover, it is well-established that "[t]he ALJ always has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered[,]" Garcia v. Comm'r of Soc. Sec. (quoting Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003)), and this special duty exists even when the claimant is represented by counsel, Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). Given the definition of illiteracy in the regulations and Plaintiff's negative response to the question, "Can you write more than your name in English?" it was incumbent on the ALJ to develop the record further.

The Court therefore finds that the ALJ erred at step five in (a) failing to fully develop the record with respect to Jeffery's literacy and ability to communicate in English and (b) failing to properly apply Rule 202.09 in his determination of whether she was disabled.

///
///

## VI. CONCLUSION AND RECOMMENDATION

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. See Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981). Remand is warranted where additional administrative proceedings could remedy defects in the decision. See Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984); Lewin, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, see Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980) (claimant deceased); where the record has been fully developed, see Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985) ("[T]he uncontroverted evidence establishes total disability.").

Here, the Court has concluded that this is not an instance where no useful purpose would be served by further administrative proceedings; rather, additional administrative proceedings still could remedy the ALJ's errors at step five of his analysis. See Silveira, 204 F.3d at 1261-62 (remanding where ALJ made no express finding that claimant was literate in English and there was insufficient evidence in the record to determine whether he was literate in English).

For the foregoing reasons, this Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED**, and that judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings.

This Report and Recommendation will be submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **August 17, 2018**. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before

**August 24, 2018**.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  August 2, 2018

_Ruben Brooks_
Hon. Ruben B. Brooks
United States Magistrate Judge